The complainant stated that Thomas Fenwick, a son and devisee and legatee of Edward Fenwick, became indebted to complainant in the year 1779; and in the year 1780, offered him the sale of a lot of land on the Bay of Charleston* which was devised to him by his father: That finding Thomas Fenwick could liot pay him in any Other way, he agreed to purchase the lot,- and the price' Was fixed, by appraisement, at 620i. sterling — ¡Whereupon Thomas Fenwick executed titles for the lot to complainant on the 1st August,1780; and after discounting his debt, there *146 Remained a balance due to Fenwick of 300J. for which coin-plainant gave his note of hand: That the title deeds were sent to complainant executed; at which time Mr. Hall and Sams happened to be at complainant’s bouse — He mentioned to them wliat the deed was; and Mr. Hall informed him that Thomas Fenwick had no right to sell any part of M& estate, by his father’s will, until his sisters* ^gacies were paid; which complainant alledges was the first notice he ever had of any incumbrance on the said I®*: That complainant afterwards questioned Thomas Fenwick on the' subject, who acknowledged there was some incumbrance thereon; but that the rest of his cs^e being sufficient' to answer every purpose of his father’s will, he considered it of little importance: That complainant endeavoured to obviate the difficulty by various proposals to the said Thomas Fenwick, and even offered to rescind the contract altogether, and to receive his original debt from liim, although complainant had incurred considerable expense by preparing to build thereon — 'But Fenwick refused his offers, and sued complainant on his note of hand, in the board of police,* and recovered the money.* Thus unfortunately situated, complainant applied to Mr. Williams, then an eminent counsellor, on the safety of building on the said lot, as' by its continuing unimproved, he could derive ho advantage from the possession of it. — Mr. Williams informed complainant, that Thomas Fenwick’s estate was sufficient to satisfy all the incumbrances on it, without having recourse to this lot; and that, at any rate, a court of chancery would allow for the expense of any improvements made thereon by him:: That complainant, relying on this opinion, laid out considerable sums of money in buildings and improvements, on the lot in question: That complainant had no notice from the executpr; and never *147 paid but one sum (7Si. on the 14th August, 1780,) to Fenwick voluntarily — the balance he was compelled to pay by order of the board of police: whence he infers that he could not then (on the 14th August) have known of his being exposed to the incumbrances.
*146 DECEMBER. 1787.
son"" wimR" Gibbes, exe-ward ° Vet-wick, dec’d.
The legatee having earn-the°ft estiítí Kis part of tate held liar¿e %amak¿ good the loss,
*147 Complainant further complains, that this lot has lately been sold, with other parts of Thomas Fen-wick’s estate, by a decree of this court, to which the complainant was not a party, to discharge the incum-brances; in which decree it was ordei*ed that no allowance should be made to complainant for the buildings erected by him; on the ground, as complainant understands, that the executor had given him previous notice; and that Thomas Fenwick had no right to sell: But complainant insists that he had no such notice from the executor or any person previous to the purchase: That the amount sales of the said lot, and other parts of Thomas Fenwick’s estate, exceeds considerably the amount of the incumbrances thereon, imposed by his father’s will, as appears by the master’s report; but the executor refuses to apply any part of the surplus to reimburse complainant for his expenses aforesaid; which is the harder on the, complainant, as the buildings placed by him on the said lot, certainly raised the value and price of the same, at the sale made by order of this court.
Complainant prays that the executor may be decreed to pay him the surplus of the price of the said lot and buildings, over and above the incumbrances imposed on Thomas Fenwick’s estate by his father’s will: And that some other allowance may be made him in compensation for his costs and expenses in the premises.
The defendant, the executor, in his answer, stated his ignorance of the transactions between complainant Simpson and Thomas Fenwick. All that he knelt was, that some time about the end of the year 1780, or beginning of 1781, Thomas Fenwick endeavoured to prevail on defendant to execute titles jointly with him for the lot to complainant, which defendant refused, and forbade said Thomas from selling the lot: That Mr. Williams called on defendant at complainant’s request, to know if he would join *148 in the conveyance of the lot to complainant; but defend* an* refused, and stated to Mr. Williams, that independent of the charge of paying one of his sister’s legacies, the said Thomas had carried off a great number of negroes, ^a^ei',f) es^ate? beyond his proportion, the value of which would be more than his lands would sell for; and that be, defendant, would endeavour to recover back the land for the testator’s children, in compensation for the negroes so carried off. Defendant admitted that complainant expended some money in repairing the buildings on the lot, and the value was thereby somewhat enereas-ed; but that complainant incurred the expense after notice of the incumbrance, and claim of testator’s estate thereon: and therefore the loss, if any, is in consequence of his own conduct; but defendant does not believe the injury to complainant to be great, as be let the stores, for some years, at a great rent: That defendant does not know whether the amount sales of the estate of Thomas Fenwick exceed the incumbrances imposed on it by the father’s will; but defendant hopes, that on proof of the real loss sustained by the testator’s estate, from Thomas’s carrying off more than his proportion of the negro slaves, the surplus of his estate may be applied to make the s.ame good; and that the balance only, if any, be paid to complainant, he at the same time accountable for the rents: Defendant thinks himself justified in refusing to reimburse complainant, inasmuch as the greatest part, if not the whole of the expense of building, was incurred subsequent to complainant’s knowledge of the incumbrances on the said Thomas’s estate, and the claim for taking away negroes.
On the hearing of this case, on the 18th and 19th De. cember, it was contended for complainant, that he had no notice of the former order of tbecourt of chancery, directing that no*part of Edward Fenwick the testator’s estate should be sold, till tbe debts arid legacies were paid; the court of chancery being at the time Of the purchase by the complainant in a state of annihilation, the British being piasters of the country: That Thomas the son was devisee and owner of the lot of land, and had a right to sell it, subject only to the burthens imposed by the will: That *149 Mr. Simpson the complainant was a fair purchaser, for valuable consideration, and ought to be protected: That the lot ought not to be taken from him, or that in all events, he ought to be paid for his great and expensive improvements. — ’The following cases were cited, 3 Bac. 642-5. 1 Eq. Cas. abr. 322, 333. 2 Vern. 30, 156, 600.
For defendant, it was insisted, that the complainant was informed, before he paid the money, that the devisee Thomas Fenwick had no right to sell the lot, unlesB subject to all the regulations of the will, which charged daughters’ portions on the sons’ estates; and that the estate was impounded by a then subsisting order of the court of chancery; and that Thomas’s share of it was liable for the amount of the negroes of the estate, carried off by him, beyond Ms share. — The counsel cited, 3 P. Wims. 387, and 3 Atk. 392, Worsley vs. Earl of Scarborough.
The court, on the 22d December, 1787, decreed that the bill should be dismissed with costs.
No reasons were put on record, but chancellor Mathews’s notes of the case contain the following remax’ks: <s The order of the court (impounding the estate) must have been made under an impx’ession, that Thomas and Edward Fenwick wex’e likely to make away ’with the estate; as such an order is unusual in any other case, where there are executors or trustees to carry into execution the will of the testator. The depi’edation was committed by Thomas Fenwick long before any debt was contracted with the complainant — Therefore the minor legatees were become creditors on Thomas Fenwick before any alienation. But if the sale is valid, on whom will the loss fall? On the two younger sons, who are to raise four of the portions, which could only be done by their utter ruin: For if almost all their negroes were taken away, their lands would produce no profit; consequently they would be sold to pay the incumbrance, so that they must be ruined, and Thomas Fenwick thereby benefitted so much more than his portion, as their loss amounts to. The deeds were executed on the 1st August, and no money paid (by the complainant) till the 14th August. Therefore from complainant’s own shewing, it is highly pre, *150 sumable it must have been on the day, or within a day or twq after the execution of the deeds by Fenwick, that they were brought to complainant, at which time Mr. Hall gave him notice of the incumbrance. If after this he would venture to pay money, and to erect buildings, he did it at his own risk, and with his eyes open. The payment made by authority of the board of police, we have nothing to do with, and can pay no regard to it. Besides, the complainant is secured for his purchase money, (by a bond of indemnity from Thomas Fenwick, with the . security of Mr. Valk, takep by advice of Mr. Williams.) The complainant therefore has no equity. The property wag impounded by the court of chancery, and suit pending, at the time of the purchase. The minor legatees were fair and equitable creditors long prior to any debt contracted with the complainant. If relief were to he granted to complainant, it would be to the ruin of the two younger sons, and to the unjust emolument of Thomas Fenwick’a estate, so far beyond what he was entitled to. The com-, plainant had notice before he paid the money or erected the buildings; apd besides he is otherwise secured, which renders the interposition of this court unnecessary — And to that security he must have recourse for relief.”
». b. p. 146.
Drayton,' Bee, Edward Rutledge for complainant; Hugh Rutledge and general Pinckney for defendant..
It was ordered that the interrogatorial part of hills bo omitted; and that replications and rejoinders be disused; and that prolixity and unnecessary length of pleadings he avoided,

 The board of police was a court constituted by the authority of the British military commanders, then occupying Charleston as a garri--son. It had none of the characteristics of a regular court of justice, according to British or American forms; and rested for its authority on no other foundation than tho pleasure-of the military commander-in-chief. — Its .proceedings have never been recognized as legal in thip country.-- ’